# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 09-2674-BLS

MAX-PLANCK-GESELLSCHAFT ZUR FORDERUNG DER
WISSENSCHAFTEN E.V., et al.                    , Plaintiff(s)

v.

WHITEHEAD INSTITUTE FOR BIOMEDICAL            , Defendant(s)
RESEARCH, et al.

## SUMMONS

To the above-named Defendant: Whitehead Institute for Biomedical Research

You are hereby summoned and required to serve upon Thomas F. Maffei, Griesinger, Tighe & Maffei, LLP

plaintiff's attorney, whose address is 176 Federal Street, Boston, MA 02110 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the 26th day of June , in the year of our Lord two thousand and nine .

Michael Joseph Donovan
Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____,200___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

_____

_____

_____

Dated:_____, 200___.       _____

**N.B.   TO PROCESS SERVER:–**
PLEASE PLACE **DATE** YOU MAKE SERVICE ON DEFENDANT IN THIS BOX **ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

| June 28, 200 8 |

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No.____

MAX-PLANCK-GESELLSCHAFT ZUR FORDERUNG DER WISSENSCHAFTEN E.V., et al, Plff(s).

v.

WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                          SUPERIOR COURT

MAX-PLANCK-GESELLSCHAFT ZUR )
FÖRDERUNG DER WISSENSCHAFTEN E.V., a )
corporation organized under the laws of Germany; )
MAX-PLANCK-INNOVATION GMBH, a )
corporation organized under the laws of Germany; )
and ALNYLAM PHARMACEUTICALS, INC., a )
Delaware corporation, )
                                                                                )
                         Plaintiffs,                              )
                                                                                )
            v.                                                               )   Civil Action No.   09-2674-BLS
                                                                                )
WHITEHEAD INSTITUTE FOR BIOMEDICAL )
RESEARCH, a Delaware corporation; )
MASSACHUSETTS INSTITUTE OF )
TECHNOLOGY, a Massachusetts corporation; )
BOARD OF TRUSTEES OF THE UNIVERSITY )
OF MASSACHUSETTS, a Massachusetts )
corporation, )
                                                                                )
                         Defendants.                           )

RECEIVED JUN 26 2009 SUPERIOR COURT - CIVIL MICHAEL JOSEPH DONOVAN CLERK / MAGISTRATE

## COMPLAINT

### INTRODUCTION

1. This is an action relating to common law and G. L. c. 93A claims arising out of misappropriation of and damage to important property rights in a series of inventions, and for breach of the fiduciary duty arising out of a contract relating to those inventions. Plaintiff Max-Planck-Gesellschaft zur Förderung der Wissenschaften ("Max Planck") is the owner of valuable intellectual property that is being irreparably harmed by the defendants' wrongful acts. In complete disregard of their contractual, common-law, and statutory obligations, the defendants have misappropriated inventions owned by Max Planck and misrepresented those inventions as their own. Specifically, the defendants are irreparably compromising Max Planck's ownership by refusing to concede that the inventions that they usurped rightfully belong exclusively to Max Planck. As a direct result of this misappropriation, Max Planck will be deprived of its valuable

patent estate. In order to prevent serious and irreparable harm to Max Planck, the defendants must be immediately enjoined from persisting in these wrongful acts.

## THE PARTIES

2.   Plaintiff Max-Planck-Gesellschaft zur Förderung der Wissenschaften e.V. ("Max Planck") is a corporation organized and existing under the laws of Germany with a principal place of business in Munich, Germany. The English translation of the corporation's name is "Max Planck Society for the Advancement of Science."

3.   Plaintiff Max-Planck-Innovation GmbH ("Max-Planck-Innovation"), formerly known as Garching Innovation GmbH, is a corporation organized and existing under the laws of Germany with a principal place of business in Munich, Germany. Max-Planck-Innovation is the technology-transfer arm of Max-Planck-Gesellschaft.

4.   Plaintiff Alnylam Pharmaceuticals, Inc. ("Alnylam") is a Delaware corporation with a principal place of business in Cambridge, Massachusetts.

5.   Plaintiffs are informed and believe, and on that basis allege, that Defendant Whitehead Institute for Biomedical Research ("Whitehead") is a Delaware corporation with a principal place of business in Cambridge, Massachusetts.

6.   Plaintiffs are informed and believe, and on that basis allege, that Defendant Massachusetts Institute of Technology ("MIT") is a Massachusetts corporation with a principal place of business in Cambridge, Massachusetts.

7.   Plaintiffs are informed and believe, and on that basis allege, that Defendant Board of Trustees of the University of Massachusetts ("U. Mass.") is a Massachusetts corporation with a principal place of business in Worcester, Massachusetts.

## JURISDICTION AND VENUE

8.   Jurisdiction is proper in the Commonwealth of Massachusetts pursuant to Mass. Gen. L. c. 223A, § 3, because the Defendants reside, and have transacted business, in Massachusetts.

9. Venue is proper in Suffolk County pursuant to Mass. Gen. L. c. 223, § 8(4) and c. 93, § 42A.

## FACTUAL ALLEGATIONS

### *Max Planck and its technology-transfer arm, Max-Planck-Innovation*

10. Plaintiff Max Planck is a non-profit academic research institution in Germany whose mission is to perform cutting-edge scientific research in the interest of the public good

11. Plaintiff Max-Planck-Innovation is Max Planck's technology-transfer arm and manages Max Planck's patenting and commercialization endeavors on behalf of Max Planck. Max-Planck-Innovation was created in order to promote the transfer of Max Planck's proprietary technology to the marketplace and thereby further Max Planck's mission to make its technological advances available to the public.

### *Ownership of the Tuschl I and II Intellectual Property*

12. During the 1990s, scientists from Max Planck and two other academic institutions collaborated on research that yielded groundbreaking inventions in the therapeutically promising field of RNA interference ("RNAi"). Thomas Tuschl of Max Planck, Philip Sharp and Philip Zamore of Whitehead, and David Bartel of MIT developed a series of inventions and proprietary technologies relating to RNAi (the "Tuschl I inventions"). Tuschl performed part of his work while employed at Whitehead, and part of his work while employed at Max Planck, and he assigned his respective interest in the Tuschl I inventions to Whitehead and Max Planck. Sharp and Bartel each assigned their interests in the Tuschl I inventions to Whitehead and MIT, respectively. Although Zamore performed his work while employed at Whitehead, he later joined U. Mass. and assigned his interests in the Tuschl I inventions to U. Mass., which claims to be a co-owner of the Tuschl I inventions along with Max Planck, Whitehead, and MIT.

13. Also during the 1990s, a separate set of inventors—Thomas Tuschl, Sayda Elbashir, and Winfried Lendeckel, who were all scientists at Max Planck at the time of the invention—developed a separate series of inventions and proprietary technologies also relating to RNAi (the "Tuschl II inventions"). The Tuschl II inventions revolutionized the field of RNA

interference, as is reflected by the co-inventors' 2001 publication in the prestigious scientific journal *Nature*. Tuschl, Elbashir, and Lendeckel all assigned their interests in the Tuschl II inventions to Max Planck. Max Planck therefore is the sole owner of the Tuschl II inventions. Thomas Tuschl is the only inventor who made inventive contributions to both the Tuschl I and Tuschl II inventions.

### *Max Planck's Joint Invention and Marketing Agreements with the Defendants*

14. On or about September 19, 2001, Max Planck, Max-Planck-Innovation (then called Garching Innovation), Whitehead, MIT, and U. Mass. entered into a Joint Invention and Joint Marketing Agreement (referred to by the parties as the "Old Agreement") in order to facilitate the monetization of the parties' respective intellectual-property rights for the benefit of each property owner. The Old Agreement delineates the parties' respective property rights in the Tuschl I and Tuschl II inventions for purposes of licensing the RNAi technology for sale as research reagents, and for internal research use.

15. In general terms, the Old Agreement provides that (a) Whitehead assumes primary responsibility for securing patent protection for the Tuschl I inventions, subject to advice and comment by the other co-owners, (b) Max Planck authorizes Max-Planck-Innovation to act as its sole and exclusive agent for licensing purposes, and (c) Max Planck, Max-Planck-Innovation, Whitehead, and U. Mass. jointly authorize MIT to license the Tuschl I and II inventions to distributors for the sale and use of research reagents.

16. More particularly, the Old Agreement provides that: "Whitehead shall manage the patent filing, prosecution and maintenance of the [Tuschl I invention]. MIT, U. Mass., and MPG [Max Planck] will be copied on all patent correspondence. The prosecution, filing and maintenance of all [Tuschl I invention] patent applications and patents will be the primary responsibility of Whitehead; provided, however, MIT, U. Mass., and MPG will have reasonable opportunities to advise Whitehead and will cooperate with Whitehead in such prosecution, filing and maintenance." Old Agreement ¶ 1(a) (the "patent-management clause").

17. On or about July 30, 2003, Max Planck and Max-Planck-Innovation (then called Garching Innovation) entered into a second agreement with Whitehead and MIT—the Joint

Invention and Joint Marketing Agreement for RNAi Therapeutic Purposes (the "Therapeutic Use Agreement") in order to facilitate the monetization of the parties' respective intellectual-property rights for the benefit of each property owner. The Therapeutic Use Agreement delineates the parties' respective property rights in the Tuschl I and Tuschl II inventions for purposes of licensing the proprietary technology for therapeutic purposes. This later agreement therefore has a different scope than the Old Agreement, which instead focuses on the licensing of the RNAi technology for sale and use as research reagents.

18. In general terms, the Therapeutic Use Agreement provides that (a) Whitehead assumes primary responsibility for the filing of patent applications based on the Tuschl I inventions, subject to advice and comment by the other co-owners, (b) Max Planck authorizes Max-Planck-Innovation to act as its sole and exclusive agent for the licensing purposes, and (c) Max Planck, Whitehead, and MIT jointly authorize Max-Planck-Innovation to grant two non-exclusive licenses to their ownership interests in the Tuschl I and II inventions for therapeutic purposes. U. Mass. did not enter into this second agreement and instead opted to license its ownership interest in the Tuschl I inventions to other companies.

19. More particularly, the Therapeutic Use Agreement provides that the filing of patent applications based on the Tuschl I inventions "shall be managed by and be the primary responsibility of Whitehead," subject to the following provisions: "Whitehead shall

    a.    (i) *keep the Remaining Joint Owners* [Max Planck, MIT, and U. Mass.] *and the Therapeutic Licensees* [Alnylam] *reasonably informed* as to the filing, prosecution, maintenance and abandonment of the Remaining Joint Invention [the Tuschl I invention],

    b.    (ii) *furnish the Remaining Joint Owners and the Therapeutic Licensees copies of documents* relevant to any such filing, prosecution, maintenance and abandonment, and

    c.    (iii) *allow the Remaining Joint Owners and the Therapeutic Licensees reasonable opportunity to comment and advise* on patent attorneys to be used and on documents to be filed with any patent office which would affect the Remaining Joint Invention, and

d.  (iv) *give good faith consideration to the comments and advice* of the Remaining Joint Owners and the Therapeutic Licensees." Therapeutic Use Agreement ¶ 1(a) (the "patent-management clause") (emphasis added).

### *The License Agreements with Alnylam*

20. On or about December 20, 2002, Max-Planck-Innovation, on behalf of Max Planck, entered into a first co-exclusive license agreement with Alnylam relating to the Tuschl I and Tuschl II inventions. Pursuant to the Therapeutic Use Agreement, Whitehead and MIT also agreed to be bound by this co-exclusive license agreement with Alnylam on or about July 31, 2003.

21. On or about July 30, 2003, Max Planck also entered into a second co-exclusive license agreement with Ribopharma AG relating to the Tuschl I and Tuschl II inventions.

22. As a result of Alnylam's acquisition of Ribopharma on or about July 31, 2003, Alnylam is effectively the exclusive licensee of the Tuschl II inventions for therapeutic purposes.

23. Unlike the other co-owners, U. Mass. instead chose to license its property rights in the Tuschl I inventions to companies other than Alnylam. If a Tuschl I patent issues that incorporates the usurped Tuschl II invention, then U. Mass.'s licensees will unfairly gain access to the Tuschl II property without paying any consideration for a license to the Tuschl II property. As a result, Alnylam will no longer be able to reap the benefit of its license agreement with Max Planck. Hence, Alnylam has a substantial and immediate interest in preventing Defendants' misappropriation of the Tuschl II inventions, as it stands to lose any and all competitive advantage in the marketplace that it otherwise would have if it were the sole company with licensing access to the Tuschl II inventions for therapeutic purposes.

24. Alnylam therefore will suffer significant and irreparable harm if the Court does not issue a temporary restraining order in addition to preliminary and permanent injunctive relief.

### *Defendants' Misappropriation of Max Planck's Property Interest in the Tuschl II Inventions*

25. By agreeing to the terms of both the Old Agreement and the Therapeutic Use Agreement, Whitehead affirmatively assumed a duty to act in good faith on Max Planck's behalf

for the benefit of Max Planck and in Max Planck's best interests in securing patent protection for the parties' respective intellectual property.

26.     By agreeing to the terms of the Therapeutic Use Agreement, Whitehead also affirmatively assumed a duty to act in good faith on Alnylam's behalf for the benefit of Alnylam and in Alnylam's best interests in securing patent protection for the co-owners' respective intellectual property.

27.     By agreeing to the terms of both the Old Agreement and the Therapeutic Use Agreement, and by paying a portion of Whitehead's prosecuting attorney's fees, Max Planck entrusted its intellectual-property rights to Whitehead and reposed faith, confidence, and trust in Whitehead's judgment and advice in securing patent protection for the parties' respective intellectual property.

28.     Max Planck, by virtue of receipt of monies from Alnylam, has paid Whitehead to apply for patent protection of its ownership interest in the Tuschl I inventions on Max Planck's and the other Tuschl I co-owners' behalf. Whitehead knows that Plaintiffs reposed faith, confidence, and trust in its judgment and advice, yet continues to seek, to Plaintiffs' detriment, patent protection for aspects of the Tuschl II inventions for the benefit of the co-owners of the Tuschl I inventions.

29.     In direct contravention of its obligations under both the Old Agreement and the Therapeutic Use Agreement as well as its statutory and common-law duties, Whitehead is seeking to misappropriate the inventions that were invented by the Tuschl II inventors by including in Tuschl I patent applications filed with the United States Patent and Trademark Office ("USPTO") material regarding those inventions.

30.     Max Planck and Alnylam have repeatedly informed Whitehead that inserting the Tuschl II inventions into the Tuschl I patent applications impermissibly broadens the scope of the patent protection to embrace the Tuschl II property that rightfully belongs only to Max Planck. Whitehead has failed, and affirmatively refused, to remove the Tuschl II inventions from the Tuschl I patent applications, and has failed to offer any justification to Plaintiffs for

failing and refusing to direct prosecution counsel to delete the Tuschl II inventions from the Tuschl I applications.

## THE NEED FOR INJUNCTIVE RELIEF

31. Injunctive relief is necessary to protect Max Planck's and Alnylam's valuable intellectual-property rights in the Tuschl II inventions. In the absence of injunctive relief, Defendants will continue to request that the USPTO grant them patents in the Tuschl I family that include the Tuschl II inventions, thereby irreparably misappropriating those inventions from Max Planck and its exclusive licensee, Alnylam. In short, Defendants seek to wrongfully capitalize on and reap the benefits of Max Planck's property rights.

32. Plaintiffs have no plain, speedy, and adequate remedy at law and will suffer irreparable damage, injury, and harm unless equitable relief is granted. Plaintiffs, therefore, seek a preliminary and permanent injunction against Defendants, ordering them as set forth below.

33. Plaintiffs further seek a Temporary Restraining Order against Defendants to enjoin any of them from taking any further action in connection with the prosecution of any Tuschl I application, including the payment of the issuance fee should the USPTO issue a notice of allowance for any Tuschl I application. An imminent and significant danger exists that Defendants will take actions to obtain such a patent, thereafter making it essentially impossible to remove the Tuschl II inventions from any patent that may issue based upon a Tuschl I application. If Defendants are able to obtain a patent that includes the Tuschl II inventions, they will successfully usurp Max Planck's inventions for their own benefit, thereby irreparably harming Max Planck and its exclusive licensee Alnylam.

## COUNT I

### Breach of Contract

34. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

35. A written contract, the Old Agreement, exists between Plaintiffs Max Planck and Max-Planck-Innovation and Defendants Whitehead, MIT, and U. Mass.

36. A second written contract, the Therapeutic Use Agreement, exists between Plaintiffs Max Planck and Max-Planck-Innovation and Defendants Whitehead and MIT.

37. At all relevant times, Plaintiffs performed, or stood ready, willing, and able to perform its obligations under both Agreements.

38. Whitehead has breached, and continues to breach, the Agreements by, among other acts:

    a. failing to keep Max Planck reasonably informed as to the patent prosecution of the Tuschl I invention as required by both the Old Agreement and the Therapeutic Use Agreement;

    b. failing to furnish Max Planck with copies of documents relevant to the patent prosecution of the Tuschl I invention as required by both the Old Agreement and the Therapeutic Use Agreement;

    c. refusing to provide Max Planck an opportunity to comment and advise on patent attorneys to be used and on documents to be filed with the USPTO as required by both the Old Agreement and the Therapeutic Use Agreement (collectively, the "Agreements"); and

    d. failing to give good faith consideration to the comments and advice of Max Planck as required by the Therapeutic Use Agreement.

39. As a direct and proximate result of these and other violations, Max Planck has suffered and will continue to suffer substantial and irreparable injury.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

40. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

41. All contracts in Massachusetts include an implied covenant of good faith and fair dealing, which requires that neither party take any action that will deprive the other of the benefit of the contract.

42. Plaintiffs Max Planck and Max-Planck-Innovation entered into Therapeutic Use Agreement and the Old Agreement in order to, among other things, benefit from the development and commercialization of the parties' respective intellectual-property rights without damaging Plaintiffs' property rights.

43. Whitehead understood that at least one of the purposes of the Agreements was for the parties to the contract to benefit from the development and commercialization of their respective intellectual-property rights without favoring any of the parties' rights to the detriment of the other parties. Whitehead further understood that Plaintiffs Max Planck and Max-Planck-Innovation wanted to further the commercialization of—and maximize the value of its property interest in—both the Tuschl I and Tuschl II inventions by entering into the Agreements.

44. In violation of this implied covenant of good faith and fair dealing, and as a direct and proximate cause, Whitehead has damaged and is continuing to damage the value of Max Planck's property interest in, and business prospects with respect to, the Tuschl II inventions, thereby causing irreparable injury.

## COUNT III

### Breach of Fiduciary Duty

45. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

46. As the party contractually responsible under the Agreements for securing patent protection for the Tuschl I inventions, Whitehead has a fiduciary duty to act in Plaintiffs' best interests as to matters relating to the patent prosecution and not to take actions that might be to Plaintiffs' detriment..

47. Pursuant to the Agreements, Plaintiffs reposed and continue to repose faith, confidence, and trust in Whitehead's judgment and advice in matters relating to securing patent protection.

48. Whitehead knew that Plaintiffs reposed and continue to repose faith, confidence, and trust in Whitehead's judgment and advice in matters relating to securing patent protection.

49. Whitehead breached its fiduciary duty to Plaintiffs by misappropriating the Tuschl II inventors' invention; by attempting to derive improper personal benefit in the process of securing patent protection for the Tuschl I invention; by engaging in self-dealing to the detriment of Max Planck's property rights and economic interests in the Tuschl II patent estate; and by reason of other acts or omissions not in good faith or involving intentional misconduct.

50. As a direct and proximate result of Defendant Whitehead's breach of fiduciary duty, the Plaintiffs have suffered and will continue to suffer irreparable injury.

51. In acting as alleged herein, Defendants acted with malice, fraud and oppression. Accordingly, Plaintiffs are entitled to recover punitive damages.

## COUNT IV

### Waste

52. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

53. Whitehead owed and continues to owe a fiduciary duty to Plaintiffs to secure patent protection for the Tuschl I inventions for the benefit of all co-owners, as well as for Alnylam.

54. Whitehead committed waste upon the assets that Plaintiffs contributed for purposes of securing patent protection of the Tuschl I inventions.

55. Whitehead has spent and continues to spend Plaintiffs' assets in order to secure patent protection of the Tuschl I inventions in a manner that fails to protect the Plaintiff Max Planck's property rights in the Tuschl II inventions. To the contrary, Whitehead has taken payment from Plaintiff Alnylam, on behalf of Plaintiff Max Planck, in order to prosecute the patent applications for the Tuschl I inventions in a way that is contrary to the Plaintiff's instructions and against their explicitly stated interests.

56. Whitehead has diverted and continues to divert Plaintiffs' assets for the improper purpose of transferring to Defendants' own intellectual property estate the Tuschl II invention, which rightfully belongs to Max Planck.

57. As a direct and proximate result of Whitehead's waste, Plaintiffs have been and continue to be significantly and irreparably damaged.

## COUNT V

### Interference with Advantageous Business Relations

58. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

59. Plaintiffs Max Planck, Max-Planck-Innovation, and Alnylam possessed a prospective economic advantage in the marketplace derived from their exclusive license agreements relating to the Tuschl II inventions.

60. Defendants knew of Plaintiffs' exclusive licensing of the Tuschl II inventions.

61. Defendants intentionally interfered with the prospective advantages of Plaintiffs' license agreements through improper motives or means.

62. As a direct and proximate result of Defendants' misconduct, Plaintiffs' prospective business advantage may be irretrievably lost. Plaintiffs therefore have suffered and will continue to suffer substantial and irreparable harm.

## COUNT VI

### Unjust Enrichment

63. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

64. Defendants have been and continue to be unjustly enriched by reaping the benefits of the wrongful conduct described in the preceding paragraphs of this Complaint. In particular, Defendants have misappropriated the Tuschl II invention, thereby broadening the scope of their property rights in Tuschl I to encroach on the Tuschl II property and deriving an unjust benefit from these additional property rights.

65. Plaintiffs have incurred and continue to incur unjust detriment in the form of loss of time, money, and property as a result of Defendants' misappropriation of the Tuschl II invention.

66. The harm to Plaintiffs is and continues to be substantial and irreparable.

## COUNT VII

### Violation of Mass. Gen. Laws c. 93A

67. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

68. At all relevant times, Defendants were engaged in trade or commerce within the meaning of Mass. Gen. Laws c. 93A, §§ 1 and 11.

69. Defendants' unfair acts and practices pursuant to Mass. Gen. Laws. c. 93A include, without limitation, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, waste, unjust enrichment, and intentional interference with advantageous business relations, as set forth in this complaint.

70. The wrongful actions described herein were willful and knowing.

71. As a direct and proximate result of the foregoing knowing and/or willful unfair acts and practices of Defendants, Plaintiffs have suffered and will continue to suffer significant harm in the form of loss of money and property, including but not limited to loss of value of the Tuschl II patent estate and the revenues derived from a license to that property.

## COUNT VIII

### Declaratory Judgment

72. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

73. An actual controversy exists within the meaning of G.L. c. 231, §6A as set forth in the foregoing counts.

74. Defendants' acts as set forth in the foregoing counts have caused Plaintiffs to suffer irreparable injury.

75. This Court should issue a judgment declaring that Defendants are required to specifically include only the inventions of the Tuschl I inventors and not those of the Tuschl II

inventors in their applications for patent protection for their property rights in the Tuschl I inventions.

## COUNT IX

### Negligence

76. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

77. Whitehead, as a consequence of its fiduciary duties, owed a duty to Plaintiffs to act reasonably in avoiding harm to them.

78. Whitehead acted negligently when prosecuting the Tuschl I applications by including the Tuschl II inventions in those applications, thereby depriving Plaintiffs of the benefit of the Tuschl II inventions.

79. As a direct and proximate result of Whitehead's negligence, Plaintiffs have been harmed in an amount to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court grant the following relief:

A. A temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with or for, any of them from taking any action whatsoever with respect to the prosecution of the Tuschl I patent applications without further order of this Court;

B. A temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with or for, any of them from paying the issuance fee in the event that the USPTO issues a Notice of Allowance for any Tuschl I application;

C. An order of this Court directing Defendants to show cause, if any, at the time and place appointed in the order, why they, and each of them, should not be enjoined and restrained, during the pendency of this action, from doing any of the acts described above, and why a preliminary injunction should not issue and a receiver be appointed as prayed for herein;

D.  A declaratory judgment as requested herein;

E.  Money damages against Defendants, plus interest;

F.  Punitive damages against Defendants for breach of fiduciary duty;

G.  Plaintiffs' costs and attorneys' fees; and

H.  Such other and further relief as this Court may deem just and proper.

                                          Max-Planck-Gesellschaft zur Förderung der Wissenschaften e.V.; Max-Planck-Innovation GmbH; and Alnylam Pharmaceuticals, Inc.

                                          By their attorneys,

                                          */s/ Thomas F. Maffei/sm*
                                          */s/ SMcC*

| Of counsel | Thomas F. Maffei (BBO 313220) |
| Morgan Chu (70446) | Scott McConchie (BBO 634127) |
| David I. Gindler (117824) | GRIESINGER, TIGHE & MAFFEI, LLP |
| IRELL & MANELLA LLP | 176 Federal Street |
| 1800 Avenue of the Stars, Suite 900 | Boston, Massachusetts 02110 |
| Los Angeles, California 90067-4276 | (617) 542-9900 |
| (310) 277-1010 | |

Dated: June 26, 2009

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                                                    SUPERIOR COURT

| | |
|---|---|
| MAX-PLANCK-GESELLSCHAFT ZUR FÖRDERUNG DER WISSENSCHAFTEN E.V., a corporation organized under the laws of Germany; MAX-PLANCK-INNOVATION GMBH, a corporation organized under the laws of Germany; and ALNYLAM PHARMACEUTICALS, INC., a Delaware corporation,<br><br>                Plaintiffs,<br><br>v.<br><br>WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, a Delaware corporation; MASSACHUSETTS INSTITUTE OF TECHNOLOGY, a Massachusetts corporation; BOARD OF TRUSTEES OF THE UNIVERSITY OF MASSACHUSETTS, a Massachusetts corporation,<br><br>                Defendants. | Civil Action No. 09-2674-BLS |

## PLAINTIFFS' JURY DEMAND

Pursuant to Mass. R. Civ. P. 38(b), the plaintiffs hereby demand a trial by jury.

                                        Max-Planck-Gesellschaft zur Förderung der Wissenschaften e.V.; Max-Planck-Innovation GmbH; and Alnylam Pharmaceuticals, Inc.

                                        By their attorneys,

                                        /s/ McC

Of counsel:

Morgan Chu
David I. Gindler
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010

                                        Thomas F. Maffei (BBO 313220)
                                        Scott McConchie (BBO 634127)
                                        Kenneth R. Knapp (BBO 550063)
                                        GRIESINGER, TIGHE & MAFFEI, LLP
                                        176 Federal Street
                                        Boston, Massachusetts 02110
                                        (617) 542-9900

Dated: June 29, 2009

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                          SUPERIOR COURT

|  |  |
|---|---|
| MAX-PLANCK-GESELLSCHAFT ZUR FÖRDERUNG DER WISSENSCHAFTEN E.V., a corporation organized under the laws of Germany; MAX-PLANCK-INNOVATION GMBH, a corporation organized under the laws of Germany; and ALNYLAM PHARMACEUTICALS, INC., a Delaware corporation,<br><br>               Plaintiffs,<br><br>   v.<br><br>WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, a Delaware corporation; MASSACHUSETTS INSTITUTE OF TECHNOLOGY, a Massachusetts corporation; BOARD OF TRUSTEES OF THE UNIVERSITY OF MASSACHUSETTS, a Massachusetts corporation,<br><br>               Defendants. | 6-29-09<br>Allowed<br>(Hinkle, J.)<br>Attest:<br><br>Civil Action No. 09-2674-BLS |

## MOTION FOR APPOINTMENT
## OF SPECIAL PROCESS SERVER

The plaintiffs, by their counsel and pursuant to Mass. R. Civ. P. 4(c), hereby move this honorable Court to appoint the following as Special Process Server in this action with full power to serve all papers required to be served upon the defendants:

Beacon Hill Research, Inc.
~~Six Beacon Street~~ 2 Park Plaza
Suite ~~525~~ 409
Boston, Massachusetts ~~02108~~ 02116

The individual from Beacon Hill Research, Inc. is over the age of eighteen and is a disinterested party in the above action.

                        Max-Planck-Gesellschaft zur Förderung der Wissenschaften e.V.; Max-Planck-Innovation GmbH; and Alnylam Pharmaceuticals, Inc.

                        By their attorneys,

                        */s/ McC*

                        Thomas F. Maffei (BBO 313220)
                        Scott McConchie (BBO 634127)
                        Kenneth R. Knapp (BBO 550063)
                        GRIESINGER, TIGHE & MAFFEI, LLP
                        176 Federal Street
                        Boston, Massachusetts 02110

Dated: June 29, 2009       (617) 542-9900

2