UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MAX-PLANCK-GESELLSCHAFT ZUR | ) | |
| FÖRDERUNG DER WISSENSCHAFTEN E.V., | ) | |
| MAX-PLANCK-INNOVATION GMBH, and | ) | |
| ALNYLAM PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| v. | ) | NO. 09-11116-PBS |
| | ) | |
| WHITEHEAD INSTITUTE FOR BIOMEDICAL | ) | |
| RESEARCH, MASSACHUSETTS INSTITUTE | ) | |
| OF TECHNOLOGY, and BOARD OF TRUSTEES | ) | |
| OF THE UNIVERSITY OF MASSACHUSETTS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND
## ORDER ON DEFENDANTS' EMERGENCY
## <u>MOTION TO STAY AND FOR RECONSIDERATION</u>

May 20, 2010

DEIN, U.S.M.J.

## I.  <u>INTRODUCTION</u>

In this action, plaintiffs Max-Planck-Gesellschaft Zur Förderung der

Wissenschaften e.V. ("Max Planck Society"), Max-Planck-Innovation GmbH ("Max

Planck Innovation")[1] and Alnylam Pharmaceuticals, Inc. ("Alnylam") claim that the

defendants, Whitehead Institute for Biomedical Research ("Whitehead"), Massachusetts

---

[1]  Max Planck Society and Max Planck Innovation are referred to collectively herein as
"Max Planck."

Institute of Technology ("MIT")[2] and the Board of Trustees of the University of

Massachusetts ("UMass"), breached the parties' written agreements and misappropriated

intellectual property owned by the Max Planck Society.  During discovery, the defendants

withheld from production over a thousand documents and limited deposition testimony

involving certain communications on the grounds that the communications were protected

by the "common interest" doctrine.  Specifically, the defendants contended that they

shared a common interest, which excluded Max Planck, "in determining how to respond

to Max Planck and Alnylam's demands that certain information and data and the cross-

claim of priority with the Tushl II patent family be removed from the Tuschl I

applications."  (Docket No. 166 at 13).

On May 11, 2010, this court issued a Memorandum of Decision and Order on

Plaintiffs' Motion to Compel ("Order") in which it allowed in part and denied in part the

plaintiffs' motion for an order compelling the defendants to disclose the allegedly

privileged material.  Significantly, this court found the common interest doctrine

inapplicable to a portion of that material because the defendants had failed to establish

that MIT was represented by separate counsel in connection with (as the defendants

defined the scope of the claimed privilege) "confidential communications to obtain and

share legal advice regarding how best to respond to Max Planck and Alnylam's

---

[2]  Although MIT has been dismissed from this case, it has joined in the pending motion
and has a direct interest in its outcome.  Therefore, for purposes of the present motion, this court
has referred to MIT and the remaining defendants collectively as the "defendants."

complaints while ensuring that the broadest legally appropriate patent(s) would issue based on the Tuschl I patent applications . . . ."  (Docket No. 166 at 2).  Therefore, this court directed the defendants to "produce any documents that have been withheld on the basis of the common interest doctrine that were shared with non-lawyer employees or representatives of MIT, but not MIT's counsel", and allowed the plaintiffs' motion to compel deposition testimony "with respect to questions about the communications reflected in these documents."  (Order at 26).  The motion to compel was otherwise denied.

In response to the Order, the defendants have filed "Defendants' Emergency Motion to Stay the Court's May 11, 2010 Order and for Reconsideration of the Court's Order" (Docket No. 364).  By their present motion, the defendants are seeking to stay implementation of the Order until this motion and any appeal of the Order pursuant to Fed. R. Civ. P. 72(a) have been resolved.  They have also asked this court to reconsider its finding that the defendants failed to establish that MIT was represented by Attorney Brenda Jarrell with respect to the matter over which they are claiming a common interest privilege.

For all the reasons detailed below, the defendants' emergency motion for a stay and for reconsideration is ALLOWED IN PART and DENIED IN PART.  Because the defendants' immediate compliance with the Order would effectively undermine any success that the defendants could potentially achieve on appeal to the District Judge, this

court finds that a stay is appropriate.  All document production and depositions to be taken pursuant to the Order shall be STAYED pending further order of the court.

With respect to the defendants' request for reconsideration, this court finds that a motion for reconsideration does not provide an appropriate vehicle for reevaluating this court's prior decision regarding the scope of the legal advice that Attorney Jarrell provided to MIT.  However, in light of the volume of the production at issue and the sensitivity of the documents and testimony involved, this court will deem the defendants' motion as one to reopen the record relating to the plaintiffs' motion to compel (Docket No. 139), and will consider all of the evidence submitted by the parties in connection with the pending motion.  However, after reviewing the expanded factual record, including the document submitted by the defendants for in camera review, and considering the parties' arguments, this court is still not persuaded that Attorney Jarrell represented MIT with respect to the matter of common interest among the defendants. Therefore, and for all the reasons described below, this court's May 11, 2010 Order is hereby confirmed and the defendants' request to alter it is DENIED.

## II.  BACKGROUND

The factual background relevant to the present motion is fully described in this court's May 11, 2010 Order.  Familiarity with the substance of that Order, including both the facts and legal analysis, is assumed and will not be repeated here.

## III.   ANALYSIS

### A.   Standard of Review of Motions for Reconsideration

"[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."  United States v. Allen, 573 F.3d 42, 53 (1ˢᵗ Cir. 2009).  However, "[m]otions for reconsideration are not to be used as 'a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district court prior to judgment.'"  Id. (quoting Iverson v. City of Boston, 452 F.3d 94, 104 (1ˢᵗ Cir. 2006)).  Therefore, "[a] court will deny a motion for reconsideration based on the 'new evidence' exception if that evidence 'in the exercise of due diligence could have been presented earlier.'"  Id. (quoting Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1ˢᵗ Cir. 2005)) (alteration omitted).

In the instant case, the defendants have not shown that reconsideration is warranted under the applicable standard.  In particular, the defendants do not contend that there has been a change in the law or that there is newly discovered evidence that could not have been presented earlier.  Nor have they attempted to show that this court's Order was based on legal error or "was clearly unjust."  Id.  Rather, by their motion, the defendants are seeking to have this court revisit evidence that was submitted in connection with the plaintiffs' motion to compel, and to consider additional facts that

could have been presented earlier but were not.[3] This is not appropriate on a motion for reconsideration.

Nevertheless, this court finds that given the volume of the discovery at issue and the sensitive nature of the communications involved, the defendants should have an opportunity to have their motion considered on the merits. Therefore, this court will deem the motion as one to reopen and supplement the record with respect to the plaintiffs' motion to compel, and will allow it to the extent necessary to consider all of the evidence and arguments submitted by the parties in connection with the present motion.[4] However, even after reviewing the expanded record, this court concludes that its prior Order should stand for the reasons detailed below.

### B.    Attorney Jarrell's Role as Counsel to MIT

---

[3] The defendants argue that the issue whether Attorney Jarrell represented MIT on the matter of common interest among the defendants was raised by the plaintiffs by the first time in their Reply in support of their motion to compel, and that as a result, the defendants did not have an opportunity to submit evidence on the matter. (See Def. Mot. (Docket No. 364) at 6). This argument in unpersuasive. In their memorandum in support of the motion to compel, the plaintiffs argued that "a necessary part of the common interest doctrine is that each party be separately represented as to the matter of interest." (Docket No. 140 at 17) (emphasis added). They further argued that "[t]estimony from MIT's former licensing officer, Irene Abrams, establishes that at least MIT was not independently represented during these communications. As a result, the common interest doctrine cannot apply." (Id.). Accordingly, the question whether MIT received advice from its own counsel regarding the matter of common interest was squarely presented in the plaintiffs' opening brief, and the defendants had ample opportunity to address it.

[4] The plaintiffs contend that the only mechanism by which the defendants may challenge this court's Order is through an appeal to the District Court Judge pursuant to Rule 2 of the Rules for United States Magistrate Judges and Fed. R. Civ. P. 72. (Pl. Opp. (Docket No. 368) at 3-4). However, nothing precludes this court from reopening the record on the plaintiffs' motion to compel and considering the defendants' arguments as part of that record.

As this court determined in the Order, the defendants have established that they shared a common legal interest beginning as far back as late 2003, that they engaged in confidential communications relating to Max Planck's demands to remove the priority claim to Tuschl II and the Tuschl II data from the Tuschl I patent applications, and that their communications involved legal advice.  The defendants agree with these conclusions and have not challenged them in their present motion.  Moreover, the defendants agree that they have the burden of establishing the applicability of the common interest doctrine to the communications at issue.  See Cavallaro v. United States, 153 F. Supp. 2d 52, 56 (D. Mass. 2001) ("The party invoking a recognized privilege has the burden of establishing, not only the existence of the privilege, but also that the established privilege was not waived"), aff'd, 284 F.3d 236 (1ˢᵗ Cir. 2002).  Similarly, they agree that the common interest doctrine only applies where each of the parties attempting to assert the privilege was represented by separate counsel with respect to the matter of common interest.  See id. at 61 (lack of representation for party attempting to assert privilege under common interest doctrine "vitiates any claim to a privilege"); Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 449 Mass. 609, 614, 870 N.E.2d 1105, 1110 (2007) (common interest doctrine applies where "'two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter'") (quoting Restatement (Third) of the Law Governing Lawyers § 76(1) (2000)).  Accordingly, the issue raised by the defendants in their present motion is a narrow one – namely, whether the defendants have met their burden of

showing that Attorney Jarrell provided legal advice to MIT regarding "how to respond to Max Planck and Alnylam's demands that certain information and data and the cross-claim of priority with the Tuschl II patent family be removed from the Tuschl I applications." (Docket No. 166 at 13).  After reviewing all of the evidence submitted by the parties in connection with the present motion, this court concludes that the defendants have not met their burden.

### Lita Nelson's Deposition Testimony

In their opposition to the plaintiffs' motion to compel, the defendants relied on the deposition Lita Nelson, MIT's witness pursuant to Fed. R. Civ. P. 30(b)(6), to show that Brenda Jarrell represented MIT with respect to matters related to the common interest. This court reviewed the referenced portions of Ms. Nelson's testimony and concluded that "nothing in Ms. Nelson's testimony suggests that MIT sought or obtained legal advice from Attorney Jarrell with respect to the dispute that arose with Max Planck." (Order at 25).  In their present motion, the defendants suggest that the court misinter-preted Ms. Nelson's testimony, and they argue that when her testimony is viewed in connection with MIT's full privilege log and an email communication that Ms. Nelson addressed in her deposition, it establishes that Brenda Jarrell was MIT's counsel on matters relating to the common interest.  However, after revisiting Ms. Nelson's testimony along with the additional materials submitted by the defendants, this court's conclusion remains the same.

The relevant portion of Ms. Nelson's deposition testimony concerns some email communications between Alnylam's CEO, John M. Maraganore, Ph.D., and Ms. Nelson. Therein, Dr. Maraganore made the following request: "I wondered if we can get some of your time to discuss our usual favorite topics.  In particular, we wanted to get MIT's understanding on the overhang claims in Tuschl II that are claimed by Sirna and UMass as being part of Tuschl I."  (Def. Ex. 1 at p.3).[5]  In response, Ms. Nelson wrote in relevant part as follows:

> That's fine.  I think I can cover the issues of the overhang claim, but if you want more expertise, I would suggest that you allow us to bring in Brenda Jarrell.  She is representing Whitehead, and is not prosecuting the application (thereby preventing a conflict with possibly different interests of UMass.)  She's very bright on the subject and could be helpful.

(Id.).

In her deposition, Ms. Nelson stated that Brenda Jarrell was representing MIT, not Whitehead, as she had written in her email.  (Pl. Ex. A at 183).[6]  She also explained that MIT wanted to have Brenda Jarrell explain MIT's understanding of the overhang claims referenced in Dr. Maraganore's email rather than the attorney prosecuting the Tuschl I patent because of potentially conflicting interests between MIT and the other co-owners

---

[5]  The defendants' exhibits ("Def. Ex.") are attached to the Declaration of James L. Tuxbury (Docket No. 365).

[6]  The plaintiffs' exhibit ("Pl. Ex.") is attached to the Declaration of Michael H. Strub, Jr. (Docket No. 369).

of the Tuschl I invention, and in particular, UMass.  (See id. at 183-85).  As Ms. Nelson

testified:

> Well, although MIT could be relatively neutral on Tuschl I/Tuschl II,
> given our interests, we understood that U. Mass as a co-owner had
> somewhat different interests that were not completely aligned; and
> therefore we wanted to make sure that whoever was prosecuting the
> patent was not conflicted but was looking for – was basically not
> conflicted.
>
> And Brenda [Jarrell] represented us.  We used her simply as a very
> smart person, patent attorney, who could explain complex issues to
> us.

(Id. at 183-84).  Thus, according to Ms. Nelson, MIT believed Attorney Jarrell could

address the question posed by Alnylam's CEO without concern as to the potentially

conflicting interests of UMass or the other co-owners.

Nothing in Ms. Nelson's testimony or in the accompanying email communications

between Ms. Nelson and Dr. Maraganore suggests that MIT sought or obtained legal

advice from Attorney Jarrell with respect to the dispute that arose with Max Planck or its

licensee, Alnylam.  Rather, the evidence indicates that MIT may have sought Attorney

Jarrell's assistance in explaining complex patent issues generally, and in explaining

MIT's understanding regarding the Tuschl II overhang claims, even if that understanding

may have diverged from the position taken by UMass.[7]  In fact, Ms. Nelson's testimony

---

[7] Nothing in the record indicates whether Attorney Jarrell actually participated in any
discussion between Dr. Maraganore and Ms. Nelson regarding MIT's understanding of the
overhang data.

suggests that MIT looked for assistance from Attorney Jarrell not because it had a dispute with Max Planck, but because it was concerned about a conflict of interest with UMass.

Significantly, Attorney Jarrell was being offered as a source of information to Alnylam.  This is consistent with Attorney Jarrell engaging in privileged communications with MIT concerning the patent prosecutions in general, a subject in which Max Planck shared a common interest with the other defendants.  Offering Attorney Jarrell's assistance to Alnylam does not establish that Attorney Jarrell was providing legal advice to MIT in connection with confidential communications among the defendants which excluded Max Planck (and Alnylam) and concerned how to respond to Max Planck's demands to remove information from the Tuschl I applications.

This court has also reviewed MIT's full privilege log, as urged by the defendants. This review has further confirmed this court's assessment of Attorney Jarrell's role.  The privilege log shows that Attorney Jarrell engaged in attorney-client privileged communications with MIT and that those communications concerned "patent prosecution" and "patent prosecution strategy," among other things.  (See Def. Ex. 2).  Notably, however, the MIT privilege log shows that Attorney Jarrell was copied on only one of the many communications for which the defendants have asserted a common interest privilege. (See id.).  Thus, while the privilege log demonstrates that Attorney Jarrell represented MIT with respect to certain matters relating to the prosecution of the Tuschl I patent, it suggests that she did not provide advice to MIT regarding the dispute between Max Planck and the defendants.

The defendants argue that the fact that Attorney Jarrell was copied on a single communication for which the defendants are claiming a common interest privilege "necessarily means that Attorney Jarrell was representing MIT to provide legal advice on matters relating to the dispute with Max Planck – no one has suggested any other reason for Attorney Jarrell to have been on the document." (Def. Mot. (Docket No. 364) at 5). This court disagrees. The communication that was shared with Attorney Jarrell consists of an email from Helen Lockhart, Whitehead's counsel and patent prosecution counsel for Tuschl I, to MIT's Technology Licensing Officer, Irene Abrams. (Def. Ex. 2 at 16). The fact that Attorney Jarrell was copied on the document does not establish, or even suggest, that she was providing advice to MIT as to how to respond to Max Planck's demands. Because it is clear that Attorney Jarrell did provide legal advice to MIT on other issues relating to Tuschl I, it is not surprising that she would receive such a communication. What is surprising is that the defendants continue to maintain that Attorney Jarrell was representing MIT on the matter of common interest when her name does not appear on any of the other communications over which the defendants are asserting the privilege.

## **Additional Evidence**

In addition to the evidence described above, the defendants have submitted three documents in support of their claim that Attorney Jarrell represented MIT on matters relating to the common interest. This court finds that none of these documents is sufficient to make the necessary showing.

The first document consists of an email from Aaron D. Schwartz, a Licensing Associate at MIT, to Max Planck's patent attorney, Dr. Wolfgang Weiss.  Therein, Mr. Schwartz states that "MIT is cc'ed on correspondence for your Ref: 23801P for the Tuschl et al patent application", and he asks Dr. Weiss to add Brenda Jarrell, "our counsel for this matter to the cc list."  (Def. Ex. 3).  Thus, the document confirms that Attorney Jarrell represented MIT on matters relating to the prosecution of the Tuschl I patent.  However, it sheds no light on the scope of her representation and does not establish that MIT consulted her in connection with Max Planck's demands to remove the Tuschl II data and priority claim from the Tuschl I applications.  In fact, since MIT was requesting that Attorney Jarrell be copied on communications from Max Planck, it seems that her involvement concerned issues of common interest with Max Planck, rather than issues which excluded Max Planck.

The second document contains an email from Donna Ward at Alnylam to Whitehead's counsel, Helen Lockhart, and Monica Gerber at MIT in which Ms. Ward is responding to a draft response to an Office Action regarding the Tuschl I application, and expresses Alnylam's disappointment at the defendants' failure to remove the priority claim to Tuschl II.  (Def. Ex. 4).  Attorney Jarrell is copied on the email, along with numerous other individuals.  However, this shows nothing about the scope of her representation and does not satisfy the defendants' burden of proof.  Furthermore, since Attorney Jarrell is being copied on correspondence from Alnylam, this again does not

establish that she was providing legal counsel on issues from which Alnylam (and Max Planck) were to be excluded.

Similarly, the third document shows that Attorney Jarrell received a copy, along with 16 other individuals, of a submission that Whitehead made to the U.S. Patent and Trademark Office relating to the Tuschl I applications.  (Def. Ex. 5).  The submission contains, among other things, an Information Disclosure Statement in which Whitehead's patent prosecution counsel stated that the applicants were not relying on the Tuschl II information to support any of the pending Tuschl I claims.  (See id. at Bates No. PS 00750).  Again, this document reveals nothing about the substance of Attorney Jarrell's representation and does not establish that she advised MIT on the matter of common interest among the defendants, which excluded Max Planck.

Finally, this court has considered a document that the defendants submitted under seal for an in camera review.  Once again, the document does not establish that MIT retained Brenda Jarrell for the purpose of responding to Max Planck's demands to remove the priority claim and Tuschl II data from Tuschl I.  While the document does confirm the existence of an attorney-client relationship between MIT and Attorney Jarrell, it fails to demonstrate that Attorney Jarrell was providing advice as to how to address the dispute with Max Planck.  Therefore, this court is not persuaded to alter any of the conclusions set forth in its May 11, 2010 Order.

## IV.  CONCLUSION

-14-

For all the reasons detailed above, the "Defendants' Emergency Motion to Stay the Court's May 11, 2010 Order and for Reconsideration of the Court's Order" (Docket No. 364) is ALLOWED IN PART and DENIED IN PART.  Specifically, the motion for a stay is ALLOWED.  All document production and depositions to be taken pursuant to the May 11, 2010 Order shall be STAYED pending further order of the court.  The motion for reconsideration, which this court has deemed a motion to reopen the record on the plaintiffs' motion to compel, is ALLOWED to the extent that it seeks consideration on the merits, but DENIED to the extent that it seeks to alter this court's May 11, 2010 Order.

      / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge