UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————    )
MAX-PLANCK-GESELLSCHAFT ZUR    )
FÖRDERUNG DER WISSENCHAFTEN    )
E.V., MAX-PLANK-INNOVATION    )
GMBH, and ALNYLAM    )
PHARMACEUTICALS, INC.,    )
    )
            Plaintiffs,    )
    )
        v.    )   CIVIL ACTION NO. 09-11116-PBS
    )
WHITEHEAD INSTITUTE FOR    )
BIOMEDICAL RESEARCH and    )
BOARD OF TRUSTEES OF THE    )
UNIVERSITY OF MASSACHUSETTS,    )
    )
            Defendants.    )
———————————————————————    )


**MEMORANDUM AND ORDER**

July 26, 2010

SARIS, U.S.D.J.

## I.  <u>INTRODUCTION</u>

Defendants have moved to dismiss the First Amended
Complaint.  The Court has issued two memoranda and orders on
those motions, with which it assumes familiarity.  (Docket Nos.
389 and 390.)  After hearing and supplemental briefing, the Court
now rules on the remaining issues as follows.

## II.  DISCUSSION

### A.  Breach of Fiduciary Duty (Count III)

Max Planck claims that Whitehead breached a fiduciary duty when it misused the Tusch1 II information during the prosecution of Tusch1 I patent applications.  Whitehead contends that any fiduciary duty arises as a result of the parties' contractual relationship and, as such, the Agreements' damages-limiting provisions apply also to the breach of fiduciary duty claim.  The Court has ruled previously that the 2001 and 2003 Agreements bar recovery of "consequential" and "incidental" damages recoverable on Max Planck's breach of contract claim.

Whitehead's argument is persuasive.  Where a fiduciary relationship arises out of a contract, the obligations are defined and limited by the terms of that contract, not by general fiduciary principles.  Fronk v. Fowler, 456 Mass. 317, 331, 923 N.E.2d 503, 515-16 (2010) (holding that "the contours of fiduciary duties in a limited partnership are subject to contract."); Chokel v. Genzyme Corp., 449 Mass. 272, 278, 867 N.E.2d 325, 330-31 (2007) (reaffirming the long-standing rule that when a director's action falls entirely within the scope of a contract, it is not subject to question under general fiduciary principles); see also Baker v. Goldman Sachs & Co., 656 F. Supp. 2d 226, 236 (D. Mass. 2009) ("In some circumstances, the contract's terms may preclude the assertion of a fiduciary

duty.").  A clause releasing a fiduciary from liability for breach of fiduciary duties is valid "unless the clause purports to include breaches committed intentionally, in bad faith, or with reckless indifference to the interests of the beneficiary of those duties." Morantz Co. v. Clarenden Indus., 670 F. Supp. 1068, 1073 (D. Mass. 1987) (citing New England Trust Co. v. Paine, 317 Mass. 542, 550, 59 N.E.2d 263, 269 (1945)).  Here, the fiduciary duty plaintiffs allege arises primarily from the contractual relationships, and so is limited by the contract terms.[1]  (Am. Compl. ¶¶ 96, 97.)

Max Planck now claims that the fiduciary relationship predates the agreements.  However, that claim is not alleged in the First Amended Complaint, which asserts expressly that the fiduciary relationship arises from the contracts.  (Id. ¶ 96.) In any event, the subsequent agreements limit the contours of the

---

[1] The contractual damages limitation clause in the 2001 Agreement provides:

> In no event shall the joint owners . . . be liable for incidental or consequential damages of any kind, including economic damages or injury to property and lost profits, regardless of whether the joint owners shall be advised, shall have other reason to know, or in fact shall know of the possibility of the foregoing.

(Fiacco Decl. (Docket No. 274), Ex. 1, ¶ 6(a).) The 2003 Agreement has a similar provision.  (Id., Ex. 2, ¶ 8(a).) Alnylam entered into a related 2002 co-exclusive license agreement with Max Planck, approved by Whitehead and MIT.  (Am. Compl. ¶ 33.)  Both consented to be bound by the 2002 agreement. (Id.)

fiduciary relationship.  Given the sophistication of the parties,
the Court finds no public policy violations stemming from the
contractual limitation on damages.  <u>See</u> <u>Marantz</u>, 670 F. Supp. at
1072 ("[T]he provisions of a contract agreed to between capable
parties should be enforced unless the provisions are in
contravention of an overriding public policy.") (citing <u>Crimmins</u>
<u>& Peirce Co. v. Kidder Peabody Acceptance Corp.</u>, 282 Mass. 367,
379, 185 N.E. 383, 388 (1933)).

    Not all damages are barred by the contract, however.  Max
Planck seeks damages in the form of attorneys fees incurred to
cover the cost of replacing the patent counsel whose advice was
compromised by Whitehead's alleged breach of fiduciary duty.
Replacing services provided by a breaching party is a natural and
foreseeable consequence of the breach, and therefore constitutes
"general damages" not barred by the contracts, which preclude
only "consequential" and "incidental" damages.  Massachusetts law
defines "general" damages as those that "flow according to common
understanding as the natural and probable consequences of the
breach . . . ."  <u>Boylston Housing Corp. v. Frank O'Toole</u>, 321
Mass. 538, 562-63, 74 N.E.2d 288, 302 (1947) (internal quotation
omitted); <u>see also</u> 24 R. Lord, Williston on Contracts, § 64.12,

p. 123 (4th ed. 2002) ("General damages are considered to include those damages that flow naturally from a breach.").[2]

## B.   Unjust Enrichment

The second issue is whether plaintiffs' equitable claims for unjust enrichment are barred by the statute of limitations.  "In Massachusetts, the statutes of limitation applicable to law actions based on contract and tort are also applicable to suits in equity." Desmond v. Moffie, 375 F.2d 742, 743 (1st Cir. 1967).  "Under Massachusetts law, the determination of whether the contract or tort statute of limitations applies is controlled by the essential nature of a party's claim." Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 636, 585 N.E.2d 315, 319 (1992); see also Hendrickson v. Sears, 365 Mass. 83, 85, 310 N.E.2d 131, 132 (1974) (looking to the "gist of the action").  A claim sounding in tort is subject to a three year statute of limitations, while one sounding in contract is subject to a six

---

[2] By contrast, "consequential" or special damages "may be presumed to have been in the contemplation of the parties at the time the contract was made by reason of special circumstances known to the parties though such damages do not flow according to common understanding as the natural and probable consequences of the breach . . . ." Boylston Housing, 321 Mass. at 562-63, 74 N.E.2d at 302 (internal quotations omitted); see also 11 J. Perillo, Corbin on Contracts, § 56.6, p. 105 (2005) (noting a practical distinction between cases in which "the sequence of breach and injury . . . would be believed to be known to the ordinary person, and other cases in which there are unusual circumstances and there must be evidence that the defendant had reason to know them and to foresee the injury that has occurred.").

year limitations period.  Mass. Gen. Laws ch. 260 §§ 2, 2A.

    1.  <u>Count VI</u>

    Plaintiffs' Count VI alleges unjust enrichment through
"wrongful use of the Tuschl II invention" to broaden the Tuschl I
applications to plaintiffs' detriment.  (Am. Compl. ¶ 114; <u>see
also</u> <u>id.</u> ¶¶ 36-51.)

    The nature of plaintiffs' claim is unclear.  The core
allegation is that Whitehead and UMass engaged in a secret
strategy to "appropriate for . . . themselves the commercial
value of the Tuschl II invention," a claim that effectively is
one for conversion.  (<u>Id.</u> ¶ 44.)  <u>See also</u> <u>Cambridge Literary
Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H.</u>, 448 F. Supp.
2d 244, 263 (D. Mass. 2006) ("Where, as here, the unjust
enrichment claim is premised on an alleged conversion, and not on
a breach of contract, the tort statute of limitations applies.").
The First Amended Complaint also asserts, however, that Whitehead
assumed a <u>contractual</u> obligation of good faith regarding the use
of the Tuschl II information.  (<u>Id.</u> ¶¶ 36-37, 50, 88.)  <u>See also</u>
<u>Micromuse, Inc. v. Micromuse, PLC</u>, 304 F. Supp. 2d 202, 209 (D.
Mass. 2004) ("A six-year statute of limitations also applies to
unjust enrichment claims based on the same underlying facts [as
breach of contract claims]."); <u>Palandjian v. Pahlavi</u>, 614 F.
Supp. 1569, 1577 (D. Mass. 1985) (applying six year limitations
period where, although plaintiff's unjust enrichment claim did

6

"rest in part on the circumstances of the alleged conversion, it also arises from the breach of contract allegations").

To the extent Max Planck's claims of unjust enrichment rest even in part on the breach of contract allegations, they are not time-barred.  To the extent the claims against Whitehead are conversion-based, however, they are barred by the three years limitation period.

All of the claims against UMass are governed by a three year statute of limitations.  Mass. Gen. L. Ch. 258, § 94; Wong v. Univ. of Mass., 438 Mass. 29, 36, 777 N.E.2d 161, 167 (2002). Therefore regardless of the nature of the claim in Count VI, it is time-barred.

Finally, since Alnylam is not a signatory to the 2001 Agreement and, indeed, did not even exist at the time it was made, it has no viable claim for unjust enrichment arising from breach of contract allegations pertaining to the 2001 Agreement.

2.  **Count XV**

Count XV alleges that UMass improperly purported to license the Tuschl II EP '325 application to Sirna and "was unjustly enriched by the consideration it received from Sirna, as UMass did not own and has never owned the Tuschl II EP '325 application."  (Am. Compl. ¶ 167.)  Plaintiffs claim that UMass made affirmative misrepresentations about its interest in the EP '325 application for the purpose of usurping property and value

7

"that rightfully belong to" plaintiffs.  (Id. ¶ 80; see also id. ¶ 47, 70-73, 81.)  Max Planck alleges that its claims pertaining to these misrepresentations are based at least in part on the 2001 Agreement.  (See id. ¶ 46.)  As stated above, regardless of whether this claim sounds in tort or contract, it is subject to a three year statute of limitations.  Mass. Gen. L. Ch. 258, § 4. For the reasons stated in paragraph 3 of the Court's Order on UMass's Motion to Dismiss (Docket No. 390), this claim for unjust enrichment is not time-barred with respect to Alnylam or Max Planck, because plaintiffs "did not learn that UMass's license to Sirna included rights in the Tuschl II EP '325 application until discovery in this case."[3]  (Id. ¶ 46; see also id. ¶¶ 40-41, 71.)

C.   **Jury Demand**

Because plaintiffs seek general damages caused by the breach of fiduciary duty and breach of contract claims against Whitehead, the Motion to Strike Plaintiffs' Jury Demand is **DENIED**.  I adopt Judge Dein's report and recommendation regarding Whitehead's motion.  I strike the jury demand on the claims against UMass, however, on the ground that the only claims remaining are equitable (unjust enrichment and Chapter 93A), and

---

[3] Both parties properly note that although the Court referred to Count XV in Paragraph 2 of its Order on UMass's Motion to Dismiss, it dismissed as time barred only the claims relating to the Zamore assignment.  For similar reasons, Counts XVII (Ch. 93A) and XVIII (declaratory judgment) are not dismissed insofar as they pertain to the Sirna license.  (See Am. Compl. ¶¶ 176, 183.)

that neither party has sought a jury trial on UMass's counterclaims.

**ORDER**

Defendants' Motion to Strike Plaintiffs' Jury Demand [Docket No. 109] is **DENIED** as to Whitehead, but **ALLOWED** as to the claims against UMass.  With respect to the unjust enrichment claim, Whitehead's Motion to Dismiss [Docket No. 185] Count VI is **DENIED** insofar as the claim sounds in contract.  UMass's Motion to Dismiss [Docket No. 182] is **ALLOWED** with respect to Count VI, but **DENIED** as to Count XV.

 /s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge