UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAX-PLANCK-GESELLSCHAFT ZUR FÖRDERUNG DER WISSENSCHAFTEN E.V., MAX-PLANCK-INNOVATION GMBH, and ALNYLAM PHARMACEUTICALS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, and BOARD OF TRUSTEES OF THE UNIVERSITY OF MASSACHUSETTS,<br><br>Defendants. | Civil Action No. 09-CV-11116-PBS |

**DEFENDANTS' OPPOSITION TO ALNYLAM'S MOTION TO COMPEL RETURN OF UNREDACTED ATTORNEY INVOICES**

In its attempt to contrive a $2 million damages theory in this case, Alnylam produced copies of invoices from various law firms which were heavily redacted to remove all descriptions of the actual work performed. At the June 2 hearing, this Court observed that Plaintiffs could not fairly claim these damages and, at the same time, refuse to produce the information needed to determine the nature of the underlying work. Plaintiffs thereafter voluntarily produced unredacted copies of these invoices containing information relevant to the claims and defenses in this case far beyond Alnylam's damages theory. Alnylam subsequently withdrew its claim for these damages. Alnylam now moves for extraordinary relief: a Court order requiring the return

1

or destruction of relevant, responsive documents it voluntarily produced. Defendants are entitled to retain these relevant and responsive documents for use in this litigation, as the Stipulated Protective Order permits.

## BACKGROUND

In their attempts to retain jury triable claims, Plaintiffs asserted that they were required to incur certain attorneys' fees as a result of Defendants' alleged actions. *See e.g.* ECF No. 163 (Order on Motion to Strike Jury Demand) at 8-10. However, as of June 2010, Plaintiffs had produced – well after the close of fact discovery – only redacted copies of the invoices for such fees, reflecting only the hours worked and amount billed. *E.g.* Quina Decl., Ex. A (sample pages from redacted invoices). All information describing the substance of the work performed by the attorneys was redacted, effectively precluding Defendants from testing the veracity of Plaintiffs' claim that Defendants' alleged actions resulted in their incurring of these fees. At the June 2, 2010 hearing, this Court recognized the fundamental unfairness of seeking fees based on redacted documents and told Plaintiffs:

> THE COURT: If you're looking for attorneys' fees, you've got to give them the bills and what it's for.
>
> MR. CHU: Understood, your Honor.
>
> THE COURT: Otherwise they can't defend against it.

Haberny Decl. Ex. 8 at 75:1-4.

Thus, Alnylam was faced with a wholly voluntary choice: give up its claim of damages and maintain its assertion of privilege as to these documents, or make the claim of damages, thereby putting the contents of the related invoice entries at issue and requiring their production.

Alnylam chose the latter. On June 23, 2010, it produced unredacted invoices to Defendants. Haberny Decl. Ex. 2. Thereafter the parties discussed Defendants' request that

Plaintiffs produce previously withheld documents relating to the fees, and prepared for depositions of the relevant law firms, which were set to begin on July 8. Quina Decl., Exs. B and C. On July 2, Alnylam's counsel cancelled these depositions, and stated that Plaintiffs "have decided to withdraw our claims for attorneys' fees on behalf of Alnylam." Haberny Decl. Ex. 3. He also requested the return or destruction of the unredacted invoices. *Id.* Because these documents were responsive to Defendants' document requests, remain relevant to the substantive claims in this case, and there is no basis for Plaintiffs to demand their return, Defendants declined. Haberny Decl. Exs. 4, 6.

## ARGUMENT

### I. THERE IS NO BASIS FOR ALNYLAM'S DEMAND FOR THE RETURN OR DESTRUCTION OF THE UNREDACTED INVOICES

Alnylam's motion seeks extraordinary relief: the return of non-privileged documents, voluntarily produced, that are responsive and relevant to the claims or defenses of the parties. Lacking case law to support its position, Alnylam simply argues that the documents are "sensitive."

Strikingly, Alnylam's motion ignores the Court's order setting forth the narrow circumstances under which the return of documents that have been produced is warranted. The Stipulated Protective Order, which was negotiated by the parties, agreed to by Alnylam, and entered by the Court at the parties' request, provides for the return or destruction of documents prior to the conclusion of this case only if they were produced *inadvertently* and are privileged. ECF No. 89-2 at ¶ 14. Neither requirement is met here.

***First***, these invoices were not inadvertently produced. Alnylam does not claim that the documents were produced accidently. Alnylam implies that it had no choice but to produce the unredacted invoices, arguing that it was "ordered" to do so. That is false. There was no order

requiring Alnylam to produce the documents. The Court simply pointed out that Plaintiffs could not expect to pursue a claim for attorneys' fees and simultaneously deny Defendants relevant discovery to determine the basis of the claim. *See* Haberny Decl. Ex. 8 at 75:1-4 (directing Plaintiffs to produce unredacted invoices "*if* you're looking for attorneys' fees") (emphasis added). Alnylam chose to seek those damages and made the express decision to produce the documents. Alnylam's reversal of its litigation strategy does not retrospectively undo its deliberate decision to produce these documents.

This Court has previously declined to order the return of even *privileged* documents in circumstances similar to those presented here. In *Ken's Foods Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 95-96 (D. Mass. 2002), counsel for two non-party individuals had consented to the production of certain documents by another non-party. In that case, as here, the applicable protective order only provided for return of documents where the production was inadvertent and the documents privileged. Magistrate Judge Dein denied a request by the individuals for return of these documents after their production, explaining that "[w]hile 'inadvertence' is not defined, it is clear that the production cannot be intentional to qualify for the Protective Order's refuge.... This court finds that production was not inadvertent and, to the extent the documents were privileged, the privilege has been waived." *Id.* at 95; *accord 20 Seyon Street LLC v. City of Waltham*, 2008 WL 4262290, *9-10 (Mass. Land Ct., Sept. 17, 2008) (denying motion to strike privileged documents voluntarily produced where movant did not argue production was inadvertant).

**Second**, Alnylam does not even claim – let alone meet its burden of proving – that these documents are privileged and that the privilege has not been waived. *In re Reorganization of Elec. Mut. Liab. Ins. Co.*, 425 Mass. 419, 421 (1997) (party asserting privilege bears burden of

proving privilege and lack of waiver). Instead of claiming the documents are privileged, as the Stipulated Protective Order requires, Alnylam claims that the invoices "reflect sensitive content," and therefore its interest in safeguarding the invoices outweighs any interest Defendants have in retaining them. (Pl. Motion at 2, 3-4.) However, Alnylam cites to no authority for such a balancing test, nor does it explain why the existing Stipulated Protective Order, freely negotiated by counsel for the parties, is insufficient. Alnylam's concern about the "sensitive" nature of the documents is adequately addressed by the Stipulated Protective Order. The "sensitive" documents remain subject to the confidentiality provisions of the Protective Order, just like all other "sensitive" documents the parties have produced in this case and marked as confidential.

Moreover, even if Alnylam's motion had established that, at one time, these documents were privileged, that privilege was waived by their voluntary production. *In re Adoption of Sherry*, 435 Mass. 331, 336 (2001) (voluntary disclosure waives privilege); *accord In re Grand Jury Subpoena*, 925 F.Supp. 849, 855 (D. Mass. 1995) (Saris, J.) (same); *Ken's Foods*, 213 F.R.D. at 96 (same). This waiver destroyed any privilege, and Alnylam cannot change its mind after the fact to resurrect it. *E.g. U.S. v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987) ("[I]t has long been held that once waived, the attorney-client privilege cannot be reasserted.") (citing cases).

The only case cited by Alnylam does not support its position. In *Philip Morris*, the Superior Court found a **waiver** of privilege as to 39,000 documents even though their disclosure had previously been required by a Congressional subpoena. *See Commonwealth v. Philip Morris, Inc.*, 1998 WL 1248003, *2, 6 (Mass. Super. 1998). Under applicable law, a party cannot judicially challenge a Congressional subpoena, but must first be found in contempt of Congress before it can seek relief. *Id.* at *2. The *Philip Morris* court explained that a party is

not deemed to have voluntarily waived a privilege if their only options were to produce the document or face contempt sanctions. *Id.* at *6. Alnylam's argument, however, overlooks the court's holding that "***all steps short of contempt must be exhausted*** before the disclosure will be viewed as compelled." *Id.* (emphasis added). The court held the privilege had been waived because the party claiming the privilege had failed to meet its burden of showing it had exhausted all available steps short of contempt of Congress before producing the documents. *Id.* at *12. Here, Alnylam had options short of contempt: it could have elected not to pursue its claim for damages before producing the documents. Simply put, Alnylam chose to place itself in this position as a result of its choice of strategy. The First Circuit has held in finding a voluntary waiver of privilege even where a party was obligated to provide documents to a regulatory agency: "MIT chose to place itself in this position by becoming a government contractor. In short, MIT's disclosure to the audit agency resulted from its own voluntary choice, even if that choice... subjected itself to the alleged obligation of disclosure." *U.S. v. MIT*, 129 F.3d 681, 686 (1st Cir. 1997).

## II.   THE UNREDACTED INVOICES REMAIN RELEVANT

Alnylam also argues that Defendants have not "articulated [a] justification" for retaining the unredacted invoices. (Pl. Motion at 4-5.) Alnylam cites to no authority that Defendants are required to "justify" the retention of non-privileged documents that were voluntarily and intentionally produced to them in discovery. Even if that were the test, Alnylam's suggestion that the documents are not relevant is simply not true. *See* Haberny Decl. Ex. 6 (letter from counsel for Whitehead explaining, in part, the continuing relevance of these documents).

These documents are relevant to a host of issues in this case, including Defendants' laches defense. For example, this Court will recall that, in early July 2009, Plaintiffs sought injunctive relief from this Court, citing an alleged dire and impending emergency. What

Plaintiffs did not reveal to the Court, and what the unredacted invoices now show, is that Alnylam's counsel had drafted a Complaint in May 2008 and considered the availability of injunctive relief in June 2008 more than *a year* before their "emergency" request for injunctive relief from this Court. *See* Quina Decl. Ex. D at ALN0196340 (May 2008 invoice entries reflecting drafting, revision, and review of complaint); *id.* at ALN0196375 (June 2008 invoice entries reflecting analyses of injunctive relief).[1] Instead of promptly seeking relief, Plaintiffs sat on their rights, waiting to sandbag Defendants (and this Court) at a time of their choosing.

Another issue in this case is whether the Defendants reasonably relied on the parties' agreement to cross-claim priority. The invoice entries reflect that, not so long ago, Alnylam also believed that there was such an agreement, and that it remained in place unless Plaintiffs could concoct a clever theory to revoke it. *E.g. id.* at ALN0196397-98 (entries regarding "research to explore contractual remedies for revoking agreement for claiming priority cross-wise").

In addition, Defendants' claims of breach of contract and the implied covenant, violations of Chapter 93A, and intentional interference with Defendants' business and contractual relations are based, in part, on Max Planck's filing (with Alnylam's direction and encouragement) of a *Goldstein* petition with the Patent Office in an attempt to bring the prosecution of the Tuschl I applications to a standstill. Among other things, these invoices reflect a keen appreciation by Plaintiffs and their counsel that there could be serious "consequences" to their filing of a *Goldstein* petition, including an "impasse" which risked the "abandonment" of the Tuschl I applications. *Id.* at ALN0196390 (July 2008 entries reflecting discussion regarding "consequences of filing In re Goldstein petition"); *id.* at ALN0196408 (July 2008 entry: "Draft

---

[1] These entries, evidencing that Plaintiffs claimed "damages" for legal fees incurred in drafting the ***Complaint*** for this action, demonstrate how improper Plaintiffs' claims for damages have been from the start.

in re Goldstein petition… Draft arguments addressing risk of abandonment due to impasse between representatives."). Such an "impasse" is exactly what Plaintiffs intended and exactly what has happened.

In sum, Alnylam made the deliberate decision to produce these relevant, responsive documents. Alnylam has now determined that the documents are no longer helpful to its changed litigation strategy. But Alnylam cannot unscramble this egg. There is no basis to compel the return of these documents.

## CONCLUSION

For the foregoing reasons, Alnylam's motion should be denied.

|  |  |
|---|---|
| Dated: September 3, 2010 | Respectfully submitted,<br><br>**WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH**<br>By its attorneys,<br><br>/s/ *James L. Tuxbury*<br>HANIFY & KING, P.C. (BBO 651335)<br>One Beacon Street, 21st Floor<br>Boston, MA 02108-3107<br>(617) 434-0400<br>Fax: (617) 423-0498<br>cmm@hanify.com<br><br>Glenn J. Pfadenhauer (*admitted pro hac vice*)<br>David C. Kiernan (*admitted pro hac vice*)<br>James L. Tuxbury (*admitted pro hac vice*)<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, NW<br>Washington, DC 20005<br>(202) 434-5000<br><br>**UNIVERSITY OF MASSACHUSETTS**<br>By its attorneys,<br><br>/s/ *Marco J. Quina*<br>Donald R. Ware (BBO No. 516260)<br>  Special Assistant Attorney General<br>Barbara A. Fiacco (BBO No. 633618)<br>  Special Assistant Attorney General<br>Marco J. Quina (BBO No. 661660)<br>  Special Assistant Attorney General<br>Foley Hoag LLP<br>155 Seaport Boulevard<br>Boston, Massachusetts 02210-2600<br>(617) 832-1000<br><br>Deirdre Heatwole, Esq. (BBO No. 228245)<br>  General Counsel<br>Jean Marie Kelley, Esq. (BBO No. 265540)<br>  Associate Counsel<br>University of Massachusetts<br>33 South Street - 4th Floor<br>Shrewsbury, MA  01545<br>(774) 455-7303 |

## Certificate of Service

I, Marco J. Quina, hereby certify that a copy of the above document was served upon the attorney of record for each of Plaintiffs Max-Planck-Gesellschaft Zur Förderung Der Wissenschaften E.V., Max-Planck-Innovation GMBH, and Alnylam Pharmaceuticals, Inc. on September 3, 2010, via e-mail.

/s/ *Marco J. Quina*
Marco J. Quina