UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAX-PLANCK-GESELLSCHAFT ZUR FÖRDERUNG DER WISSENSCHAFTEN E.V., MAX-PLANCK-INNOVATION GMBH, and ALNYLAM PHARMACEUTICALS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, and BOARD OF TRUSTEES OF THE UNIVERSITY OF MASSACHUSETTS,<br><br>Defendants. | Civil Action No.  09-CV-11116-PBS |

**UNIVERSITY OF MASSACHUSETTS' REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT ON
<u>COUNTS VII, XV, XVII, AND XVIII</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

    A.    UMass Did Not License the EP '325 Application to Sirna. .....................................1

    B.    The Alleged Grant of a Patent License to an Abandoned Application Could not Cause a Loss of Money or Property, an Unjust Detriment, or an Unjust Benefit......................................................................................................................4

    C.    UMass is not Subject to Suit under Chapter 93A ......................................................6

    D.    The Accused Actions of UMass are Within its Legislative Authority. ....................8

    E.    Plaintiffs' Declaratory Judgment Claim Should Be Dismissed...............................9

CONCLUSION............................................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Bain v. City of Springfield*, 424 Mass. 758 (1997)..................................................................6

*Baumgardner v. City of Boston*, 304 Mass. 100 (1939)............................................................8

*Beech Aircraft Corp. v. Edo Corp.*, 990 F.2d 1237 (Fed. Cir. 1993) ................................10

*Bretton v. State Lottery Comm'n*, 41 Mass. App. Ct. 736 (1996) .........................................6

*City of Boston v. Aetna Life Ins. Co.*, 399 Mass. 569 (1987)..................................................7

*City of Revere v. Boston/Logan Airport Assocs., LLC*, 416 F. Supp. 2d 200 (D. Mass. 2005)...................................................................................................................6

*DeRoche v. MCAD*, 447 Mass. 1 (2006).............................................................................. 6-7

*Estate of Janowicz v. Mass. State Lottery Comm'n*, 1994 WL 879359 (Mass. Super. Oct. 12, 1994)................................................................................................... 6-7

*Fleet Nat'l Bank v. H&D Entm't, Inc.*, 96 F.3d 532 (1st Cir. 1996) ...................................3

*HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347 (Fed. Cir. 2010)...............10

*Hyppolite v. City of Boston,* 1 Mass. L. Rptr. 31, 1993 WL 818741 (Mass. Super, June 23, 1993).......................................................................................................................7

*Joyce v. Town of Dennis*, 2010 WL 1383178 (D. Mass. March 30, 2010)...........................6

*Lafayette Place Assocs. v. Boston Redevelopment Auth.*, 427 Mass. 509 (1998)................7

*M. O'Connor Contracting, Inc. v. City of Brockton*, 61 Mass. App. Ct. 278 (2004) ..........8

*Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80 (2004).........................................8

*T. Bedrosian, L.L.C. v. Costanza*, 10 Mass. L. Rep. 459 (Mass Super. 1999) ....................6

*T. Bedrosian, LLC v. Town of Mendon*, 24 Mass L. Rep. 344 (Mass. Super 2008) ............6

*Tivnan v. Registrar of Motor Vehicles*, 50 Mass. App. Ct. 96 (2000) .................................8

*U.S. Leasing Corp. v. City of Chicopee*, 402 Mass. 228 (1988) .......................................... 6

## STATUTES

35 U.S.C. § 119(a) ................................................................................................................ 3

35 U.S.C. § 261 .................................................................................................................... 3

Mass. Gen. Laws ch. 40 § 8B ............................................................................................... 8

Mass. Gen. Laws ch. 40 § 21 ............................................................................................... 8

Mass. Gen. Laws ch. 75 § 12 ............................................................................................... 9

Mass. Gen. Laws ch. 75 § 14A ............................................................................................ 8

Mass. Gen. Laws ch. 93A ............................................................................................... 4, 6-9

Mass. Gen. Laws ch. 231A § 3 ............................................................................................ 9

Mass. Gen. Laws ch. 231A § 8 ............................................................................................ 9

Mass. Gen. Laws ch. 258 § 10 ............................................................................................. 7

**INTRODUCTION**

Plaintiffs' Opposition confirms that their Sirna-related claims are based on a "wrongful license" theory, and that this theory is predicated on a legally erroneous interpretation of the UMass-Sirna Agreement.  Because Plaintiffs' proposed interpretation is contrary to the plain meaning of the contract, UMass is entitled to summary judgment as a matter of law.

Plaintiffs do not, and cannot, dispute the following facts:

- In March 2001, Max Planck authorized the filing of the Tuschl I '832 Application with a claim of priority to Max Planck's EP '325 Application.

- UMass is a co-owner of the '832 Application.

- In June 2001, Max Planck withdrew the EP '325 Application and, as a consequence, it could serve only as a priority document.

- UMass had the right to license to Sirna all of its rights in the '832 Application.

Unable to overcome these facts, Plaintiffs resort to blurring the issues.  They consistently conflate UMass's licensing of *Tuschl I* patent applications claiming priority to the abandoned EP '325 Application with the licensing of *Tuschl II* patent applications.  This is groundless.  UMass did not license and could not have licensed the EP '325 Application to Sirna.  Plaintiffs also conflate the actions of UMass with the actions of Sirna, a non-party.  Cutting through Plaintiffs' rhetoric, the only wrongful action alleged as to UMass is its execution of the UMass-Sirna Agreement in September 2003.  Sirna's interactions with third parties thereafter are immaterial.  UMass's rightful license to Sirna of the rights it had in the '832 Application in September 2003 does not make UMass responsible for Sirna's alleged marketing and sublicensing activities years later.  If Plaintiffs truly believe that Sirna acted wrongfully, they must sue Sirna, not UMass.

**A.     UMass Did Not License the EP '325 Application to Sirna.**

As UMass's initial brief showed, Plaintiffs' proposed reading of "Patent Rights" in the UMass-Sirna Agreement as including a license to Max Planck's EP '325 Application violates

fundamental principles of contract interpretation: it would render roughly a half dozen contractual provisions nonsensical. (*See* UMass Mem. at 8-9.) Plaintiffs simply ignore the substance of these provisions, making no attempt whatsoever to resolve the inconsistencies their proposed interpretation would create. The clear dissonance between Plaintiffs' proposed construction and the contract as a whole compels rejection of Plaintiffs' argument that the contract must be interpreted as granting Sirna a patent license to Max Planck's EP '325 Application.

Attempting to find support for their strained interpretation, Plaintiffs misleadingly suggest that because the EP '325 Application is identified as one of three priority documents for the Tuschl I PCT Application, it must have been included among the patent applications licensed to Sirna. (Pl. Opp. at 6.) Plaintiffs state that Exhibit A to the contract ("List of Patent Rights") "lists" the EP '325 Application, but that claim is belied by the express language of the exhibit. In fact, Exhibit A lists exactly thirteen U.S. and foreign patent applications, all of them Tuschl I applications. (Fiacco Decl., Ex. O at 25-26.) The EP '325 Application is not on the list. Plaintiffs' disingenuous assertion is based entirely on the fact that in listing the Tuschl I PCT application (PCT/US/01/10188), the Exhibit recites, accurately, that the application claims priority to the EP '325 Application as well as to the Tuschl I '594 and '232 U.S. provisional applications. Common sense dictates that if UMass and Sirna had intended to separately *license* the EP '325 Application, then surely they would have listed it separately, as they did with the '594 and '232 applications.

Implicitly acknowledging their flawed contract interpretation, Plaintiffs argue that UMass was not authorized to convey, as part of the license to Sirna, a right to claim priority to the EP

'325 Application. This argument is a red herring.[1] It is undisputed that the Tuschl I applications that UMass licensed to Sirna recite, **with Max Planck's express consent**, a claim of priority to the EP '325 Application. Max Planck subsequently attempted to withdraw its consent and argue that the priority claim was improper, but that was well after September 2003, when UMass entered into the Sirna Agreement. (*See* Fiacco Decl., Ex. B (Amended Complaint) at ¶ 47 (noting that Max Planck asked that the cross-claim of priority be withdrawn in "late 2004").) Max Planck's belated attempt to withdraw its consent to the priority claim after UMass had already licensed all of its rights to Sirna cannot *ex post facto* undo the license grant, nor can it give rise to a claim that UMass's entering into the 2003 Agreement was an unfair or deceptive act or practice or constituted unjust enrichment.[2]

In response to UMass's showing that UMass did not license, and could not have licensed, the EP '325 Application two years after it was abandoned, Plaintiffs argue that its abandoned status is irrelevant. This argument ignores both the relevant law and the facts of this case. First, "a contract governed by Massachusetts law must be construed in accord with common sense… [and] as a business transaction entered into by practical people to accomplish an honest and straightforward end." *Fleet Nat'l Bank v. H&D Entm't, Inc.*, 96 F.3d 532, 538 (1st Cir. 1996). It would defy these principles to construe the UMass-Sirna Agreement as intended to convey a meaningless license to an abandoned application that UMass did not own. Moreover, Plaintiffs'

---

[1] Plaintiffs' argument is irrelevant to the contract interpretation and also highly misleading. Plaintiffs argue that Section 119(a) of the Patent Act requires that a priority document be directed to the "same invention." They conveniently overlook the fact that the claims of the priority document in question, the EP '325 Application, were not limited to short fragments of RNA *having a 3' overhang*, the characteristic that Plaintiffs have repeatedly told the Court was the "Tuschl II invention." In fact, Claim 1 of the EP '325 Application contains no limitation to molecules with 3' overhangs, but rather is a genus claim, just like Claim 1 of the '832 Application, broadly claiming double-stranded RNA molecules **with or without overhangs**. (*See* Fiacco Decl., Ex. E at ALN0110774.) Plaintiffs' argument that the '832 Application's claim of priority to the EP '325 Application – which Max Planck itself proposed and authorized – was improper under Section 119(a) is without merit.

[2] Under Section 261 of the Patent Act, patent applications such as the '832 Application are personal property, freely assignable. 35 U.S.C. § 261. Thus, as a matter of federal patent law, UMass had the right to license the '832

reasoning that the EP '325 Application "has substantial value as a priority application" misses the point. As a matter of patent law, the right to claim priority is distinct from the right that a license conveys, i.e., a covenant not to sue a defendant for practicing the allowed claims of a patent. Granting Sirna a license to the Tuschl I '832 Application, including its recited priority claims, is not the same as granting Sirna a license to practice the EP '325 Application or any other Tuschl II patent application.

Finally, because Plaintiffs admit that UMass's alleged knowledge of Sirna's presentations and licensing activities is "immaterial" and "not relevant" to Plaintiffs' claims (Pl. Opp. at 9),[3] it is now undisputed that the only purportedly wrongful conduct by *UMass* upon which Plaintiffs base their Chapter 93A claim is the "purported licensing" to Sirna in 2003 of the abandoned EP '325 Application. Because under the plain meaning of the Agreement, there was no such license, Plaintiffs' claims must fail.

**B.     The Alleged Grant of a Patent License to an Abandoned Application Could not Cause a Loss of Money or Property, an Unjust Detriment, or an Unjust Benefit**

In view of Max Planck's March 2001 consent to inclusion of the priority claim in the Tuschl I applications and Max Planck's abandonment of the EP '325 Application, Plaintiffs have no basis to claim that the UMass-Sirna Agreement in 2003 caused them to suffer a loss of money or property (Chapter 93A) or that in entering into the Agreement UMass obtained an unjust benefit to Plaintiffs' detriment (unjust enrichment). Plaintiffs' claim that the EP '325 Application "has value" sidesteps the only relevant question: how could plaintiffs have been

---

Application to Sirna, including its priority claims.

[3] Plaintiffs were never able to identify any proof that UMass actually knew of Sirna's alleged activities, and the undisputed evidence is that UMass did not. (UMass. Mem. at 12-13.) If Sirna acted beyond the scope of its license, any harm that flowed from those actions could not have been caused by UMass. In view of this, Plaintiffs'

harmed by the purported licensing of an abandoned application when its *only* value could be as a priority document for a priority claim that Max Planck authorized?  (*See* SUMF ¶¶ 10-12; *see also* Pl.'s Responses (undisputed).)  The answer is plainly that the purported licensing of an abandoned application could cause no harm to Plaintiffs.  Plaintiffs' Opposition offers no evidence to the contrary.

Indeed, Plaintiffs' expert, Mark Edwards, admits in his declaration that Max Planck has suffered *no damage*, excluding its now dismissed claim that UMass is not a proper assignee of the Tuschl I applications.  (Edwards Decl., Ex. A at ¶ 102.)  His admission provides an independent ground requiring dismissal Max Planck's Chapter 93A claim.  Edwards does assert that Alnylam suffered damages (i*d.* at ¶¶ 113-18.), but his analysis of Alnylam's claims is based exclusively on *Sirna's* conduct, namely, Sirna's purported licensing of Tuschl II applications to Allergan*.*  Plaintiffs do not allege, and cannot show, that UMass had anything to do with the grant of this license.[4]

Nor is there any basis for Plaintiffs' claim of an unjust benefit retained by UMass.  Neither Plaintiffs' brief nor the Edwards declaration offers any evidence as to whether and to what extent the consideration UMass received from Sirna under the Agreement was attributable to the purported license of the EP '325 Application.  (*See* Edwards Decl., Ex. A at ¶¶ 102, 113-18.)  Moreover, Plaintiffs cite no evidence that any consideration Sirna received from Allergan

---

submission to the Court of a declaration attaching voluminous Sirna materials was improper, apparently designed to imply the existence of factual issues when there are none.

[4] Plaintiffs "evidence" concerning harm related to Allergan consists entirely of statements from Alnylam's CEO that Allergan informed him it did not need a license and his speculation that is was "possible" that this view was connected to Sirna's actions.  (Pl. Opp. at 12.)  This is blatantly inadmissible hearsay and opinion testimony regarding Allergan's motivations.  Tellingly, Plaintiffs have submitted no evidence from Allergan itself.

resulted in an unjust benefit to UMass – it is undisputed that UMass did not receive and was not entitled to receive any share of that consideration.[5]  There is no evidence that *UMass* has unjustly retained benefits that allegedly belong to Plaintiffs.

### C. UMass is not Subject to Suit under Chapter 93A

Plaintiffs' admission that Chapter 93A "does not expressly include governmental entities" (Pl. Opp. at 13) is fatal to their Chapter 93A claims.  "Absent statutory language that indicates by express terms a waiver of sovereign immunity, the Legislature's intent to subject the Commonwealth to liability may be found *only when such an intent is clear by necessary implication from the statute's terms*."  *DeRoche v. MCAD*, 447 Mass. 1, 12-13 (2006).  Plaintiffs' Chapter 93A claim against UMass fails to satisfy this "stringent" requirement.[6]

Plaintiffs' only argument that the Legislature waived sovereign immunity in enacting Chapter 93A is that because governmental entities may have standing to bring suit under Chapter

---

Plaintiffs' Opposition also refers to Sirna's sublicense agreement with Protiva.  (Pl. Opp. at 11.)  However, the expert report on which they rely does not include any claim of damages relating to the Sirna-Protiva Agreement, and thus any such claim is waived.  This theory also fails because, again, it relates to conduct of Sirna, not UMass.

[5] Plaintiffs ignore the fact that UMass is not entitled to receive sublicense income from Sirna's corporate partners, such as Allergan, under the express terms of the contract.  (Fiacco Decl., Ex. O (UMass-Sirna Agreement) at § 4.7(f).)

[6] Plaintiffs' reliance on *City of Revere v. Boston/Logan Airport Assocs., LLC*, 416 F. Supp. 2d 200 (D. Mass. 2005) (Gorton, J.) and *T. Bedrosian, L.L.C. v. Costanza*, 10 Mass. L. Rep. 459 (Mass. Super. 1999) ("*Bedrosian I*") is misplaced.  Both cases rest on the assumption that until a court holds that the Commonwealth is immune from suit, it can be sued.  However, the SJC has made clear that until the Legislature has waived immunity expressly or by necessary implication, "immunity is still in effect."  *E.g. Bain v. City of Springfield,* 424 Mass. 758, 763 (1997).  To the extent *Revere* or *Bedrosian I* hold otherwise, they are wrongly decided, as Judge Gorton apparently recognized in his subsequent contrary decision in *Joyce* and as the Superior Court similarly recognized in a subsequent contrary decision involving most of the same parties and similar facts as *Bedrosian I*.  *Joyce v. Town of Dennis*, 2010 WL 1383178 (D. Mass. March 30, 2010) (granting summary judgment in favor of municipality and noting uncertainty as to whether municipality could ever be subject to suit); *T. Bedrosian, LLC v. Town of Mendon*, 24 Mass. L. Rep. 344 (Mass. Super 2008) (same).  In contrast, courts that have undertaken a proper legal analysis have suggested that Chapter 93A does not meet the requirements for effecting a waiver of immunity.  *E.g. U.S. Leasing Corp. v. City of Chicopee*, 402 Mass. 228, 232-33 (1988) ("Chapter 93A contains no explicit indication that governmental entities are to be liable under its provisions"); *Bretton v. State Lottery Comm'n*, 41 Mass. App. Ct. 736, 738 (1996) (same); *Estate of Janowicz v. Mass. State Lottery Comm'n*, 1994 WL 879359 3-4 (Mass. Super. Oct. 12, 1994) (same, holding that the Commonwealth not subject to suit under Chapter 93A).

- 6 -

93A, they also must be persons subject to suit. (*See* Pl. Opp. at 13-14 (citing *City of Boston v. Aetna Life Ins. Co.*, 399 Mass. 569, 575 (1987)).) Plaintiffs' reasoning compares apples to oranges. The "stringent" rules of statutory construction that apply in determining whether there has been a waiver of sovereign immunity do not apply when a court considers whether the Commonwealth can act as a Plaintiff under Chapter 93A, which does not involve a waiver of immunity and thus proceeds under a more run of the mill statutory interpretation. *See DeRoche*, 447 Mass at 12. In contrast, applying Chapter 93A *against* the Commonwealth would subject the Commonwealth to unlimited potential liability, including punitive (multiple) damages, and certainly would require the Legislature's waiver of sovereign immunity.[7] Application of the stringent express waiver or necessary implication test articulated in cases like *DeRoche* is clearly warranted.

Plaintiffs' contention that cases like *Aetna* are determinative on the issue of the Legislature's intent to waive sovereign immunity on Chapter 93A claims is squarely at odds with later statements of the Supreme Judicial Court that "[w]e have not yet addressed the question whether a public entity is ever a proper defendant in a c. 93A action." *Lafayette Place Assocs. v. Boston Redevelopment Auth.*, 427 Mass. 509, 536 (1998). Plaintiffs' argument is also inconsistent with the immunity from intentional torts provided by the Massachusetts Tort Claims Act, M.G.L. ch. 258, § 10. *See Janowicz*, 1994 WL 879359 at *4 (it "would be illogical to suggest that when the Legislature enacted c. 93A, the Legislature intended to subject the

---

[7] As one Court, drawing an analogy to courts' traditional reluctance to impose punitive damages on municipalities, has explained in criticizing the argument now advanced by Plaintiffs:

> There are . . . compelling policy reasons for excluding a municipality from 93A liability for punitive damages.... In general, courts viewed punitive damages as contrary to sound public policy, because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised."

*Hyppolite v. City of Boston*, 1 Mass. L. Rptr. 31, 1993 WL 818741, *4 (Mass. Super, June 23, 1993) (Saris, J.).

Commonwealth to multiple damages for a broad range of intentional conduct, including fraud and deceit").[8]

### D. The Accused Actions of UMass are Within its Legislative Authority.

Even if Chapter 93A applies to the Commonwealth, Plaintiffs' argument that UMass is subject to liability under Chapter 93A because its activities were legislatively authorized, but not compelled, is unsupported by statutory and case law.[9]

In fact, several courts have found no Chapter 93A liability where the challenged activity was simply permitted, and not compelled, under the relevant enabling legislation. *E.g. Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80, 86 (2004) (city not liable under Chapter 93A where regulation of parking had been assigned to it by statute) *citing* M.G.L. Ch. 40, § 21 ("Towns *may*… make such ordinances and by-laws…") (emphasis added); *M. O'Connor Contracting, Inc. v. City of Brockton*, 61 Mass. App. Ct. 278, 279 & 284-285 (2004) (no Chapter 93A liability in connection with city's activities in contracting for building for council on aging) *citing* M.G.L. Ch. 40, § 8B (Cities and towns "*may* establish a council on aging…") (emphasis added).

In any event, M.G.L Ch. 75, § 14A, which Plaintiffs characterize as merely permissive, is a subset, directed to intellectual property, of the more general and *compulsory* legislative requirement that UMass manage and administer all property of the Commonwealth used by UMass:  "The trustees *shall*, on behalf of the commonwealth, manage and administer… all

---

[8] Moreover, because the MTCA was enacted subsequent to Chapter 93A, if UMass is liable at all under Chapter 93A, it can only be pursuant to the provisions of the MTCA. *Tivnan v. Registrar of Motor Vehicles*, 50 Mass. App. Ct. 96, 100-101 (2000) ("[Plaintiff] cites no case, and we can find none, where a cause of action created as an exception to sovereign immunity has survived passage of the Tort Claims Act unless the claim is saved by the express language of the Act.")

[9] *Baumgardner v. City of Boston*, 304 Mass. 100 (1939) is inapposite. That case involved common law negligence liability and does not discuss Chapter 93A, which is not surprising given that it was decided nearly 30 years before the 1967 enactment of Chapter 93A. The other cases cited by Plaintiffs on this point also have nothing to do with Chapter 93A.

property, real and personal, belonging to the commonwealth and occupied or used by the university…" M.G.L. Ch. 75, § 12 (emphasis added).

E.   **Plaintiffs' Declaratory Judgment Claim Should Be Dismissed**

Plaintiffs do not deny that their declaratory judgment claim seeking a declaration of ownership of the EP '325 Application is derivative of their unjust enrichment and Chapter 93A claims. Instead, Plaintiffs argue that this claim survives because the underlying claims should survive. By implication, if the Chapter 93A and unjust enrichment claims fail, so must the declaratory judgment claim.

Plaintiffs' argument that declaratory judgment is proper here also overlooks that Sirna is not a party to this suit. Despite the fact that the allegedly harmful activity of which Plaintiffs complain is conduct by Sirna, Plaintiffs have made the strategic decision not to sue Sirna. Plaintiffs should not be allowed to sue Sirna by proxy by seeking a declaration against UMass. Given that Sirna is not a party to this action, any declaration concerning "ownership" of the EP '325 Application as sought under Count XVIII would be unenforceable against Sirna and would have no impact upon any of Sirna's alleged activities. *See* G.L. c. 231A, § 8 ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.") As Plaintiffs recognize, this Court "has discretion to refuse to enter a declaratory judgment if the judgment would not terminate the uncertainty or controversy giving rise to the proceedings…" (Pl. Opp. at 19, *citing* M.G.L. ch. 231A, § 3.) For this reason alone, Plaintiffs' declaratory judgment count should be dismissed.

Moreover, with regard to the conduct of UMass, Plaintiffs have failed even to show an actual, current controversy. There is no evidence that UMass is doing anything today to "exploit" the EP '325 Application. The entire controversy, such as it exists, is directed to the

- 9 -

claim that in 2003, seven years ago, UMass wrongfully licensed Sirna.  The Amended Complaint contains no allegations of any current UMass activities involving its "purported license" of the EP '325 Application to Sirna, and thus there is no justification for allowing Plaintiffs to pursue declaratory relief.

Lastly, as shown in UMass's initial brief, Plaintiffs' request for a declaration concerning the "owner" of the EP '325 Application is an inquiry that necessarily turns on determination of the proper inventors of that application.  *Beech Aircraft Corp. v. Edo Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993) ("At the heart of any ownership analysis lies the question of who first invented the subject matter at issue.")  Federal courts lack jurisdiction to declare the inventorship of unissued patent applications, let alone abandoned foreign patent applications that can never issue.  *See HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010).

## CONCLUSION

For the foregoing reasons, UMass respectfully requests that the Court grant summary judgment in favor of UMass on Counts VII, XV, XVII, and XVIII.

Respectfully submitted,

Dated:  September 17, 2010

**UNIVERSITY OF MASSACHUSETTS**
By its attorneys,

<u>/s/ Donald R. Ware</u>   _____
Donald R. Ware (BBO No. 516260)
   Special Assistant Attorney General
Barbara A. Fiacco (BBO No. 633618)
   Special Assistant Attorney General
Marco J. Quina (BBO No. 661660)
   Special Assistant Attorney General
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-1000

Deirdre Heatwole, Esq. (BBO No. 228245)
   General Counsel
Jean Marie Kelley, Esq. (BBO No. 265540)
   Associate Counsel
University of Massachusetts
333 South Street, Suite 400
Shrewsbury, MA  01545
(774) 455-7303

- 12 -

## Certificate of Service

    I, Donald R. Ware, hereby certify that a copy of the above document was served upon the attorney of record for each of Plaintiffs Max-Planck-Gesellschaft Zur Főrderung Der Wissenschaften E.V., Max-Planck-Innovation GMBH, and Alnylam Pharmaceuticals, Inc. on September 17, 2010, by electronic filing.

                                              */s/ Donald R. Ware*
                                              Donald R. Ware